UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.  12-CV-10668-T

---

JENNIFER W. BRODERICK

    Plaintiff

v.

PNC FINANCIAL SERVICES GROUP, INC.
    d/b/a PNC MORTGAGE
    d/b/a PNC MORTGAGE CORPORATION
    d/b/a PNC BANK
    d/b/a PNC BANCORP
    d/b/a PNC FINANCIAL SERVICES
    d/b/a PNC FINANCIAL
    d/b/a PNC

    Defendants

**AMENDED COMPLAINT / JURY DEMAND**

---

### Parties

1. Plaintiff's domicile is in Franklin, Norfolk County, Massachusetts.

2. Defendant ("PNC") is the successor-in-interest by merger to National City Mortgage Corporation ("National City"). By such merger, Defendant assumed all the assets and liabilities of National City who was the origination lender on the subject home loan of this Action: National City Loan #0005913632 with the loan amount of $408,500.00 with a closing date of 01/18/2008.

### Jurisdiction / Venue

3. This District Court had jurisdiction of this matter pursuant to *28 U.S. Code §1332* because this case involves citizens of different states and the matter in controversy exceeds the

sum of $75,000. Plaintiff is a resident of Massachusetts and the Defendant is a corporation incorporated in Ohio with its principal place of business located in Illinois and is thus deemed to be a citizen of Ohio and New York for purposes of this litigation.

4.  Venue is appropriate to this judicial district pursuant to *28 U.S. Code § 1391(b)* as this is the judicial district in which the cause of action arose because substantially all, if not all, of the events and omissions giving rise to this claim occurred here.

Statement of Facts

5.  Plaintiff Jennifer W. Broderick is the borrower on National City Loan #0005913632 having a property Address of 17 Country Road, Attleboro Massachusetts 02703. On or about 28 November 2007, Ms. Broderick and her husband at the time an Attorney Steven K. Midgley contacted Defendant's corporate predecessor National City Mortgage to apply for a purchase money loan for property located at 17 Country Road, Attleboro, Massachusetts 02703. As verified by the initial uniform residential loan application, it was a joint application by Ms. Broderick and Mr. Midgley for a loan amount of $408,500.00 at an interest rate of 6.375 percent based upon their joint monthly income of $7000.

6.  The contact for this loan application occurred over the Internet and through phone conversations between Attorney Midgley and National City's mortgage broker John Savastano. Ms. Broderick's only input into this application was to submit her W-2 statements to National City Mortgage through Mr. Savastano showing her annual income to be approximately $2,600.00. Thus, it was well known to National City Mortgage through Mr. Savastano and through its underwriting department that must have reviewed the initial application that Ms. Broderick could not qualify for this loan on her own income and that she could in no way

make payments on such loan based on her own income.

7.      At some point between the initial interview date of 28 November 2007 and the closing date of or about 11 January 2008, unknown to Ms. Broderick, Mr. Savastano or other unknown employees at National City entered into an agreement with Mr. Midgley to remove his name from the application because of his bad credit history and to leave only Ms. Broderick's name on the application because of her excellent credit history at the time.  However, when removing Attorney Midgley's name from the application, neither Mr. Savastano nor anyone at National City's underwriting department changed the gross income of $7,000.00 a month that was based on their total combined income but left that figure as it was. At all times material to this Action, Ms. Broderick understood and Defendant's agents confirmed to her that this $7000 figure on all loan applications was "household income." This was obviously done to remove Attorney Midgley's bad credit history from the application so that the loan would be approved thus guaranteeing a commission for Mr. Savastano and profit for the bank in what was an expanding real estate market at the time.

8.      Such is what occurred. Thus, at the time of closing, National City Mortgage knew through its employee Mr. Savastano and whoever in the underwriting department reviewed the loan applications that they were approving a $408,500.00 loan at 6.375 percent interest to someone who without doubt could not afford such a loan.  Jennifer Broderick was listed as the only borrower and the only debtor on the note.  Such a loan relying solely on Ms. Broderick's actual income was doomed to default and foreclosure and as such would be doomed to lose her the down payment of $26,519.36 and the $50,000.00 of improvements that she put into the property if anything happened to her husband whose income actually consisted of $7,000.00 a month.

9.     Ms. Broderick appeared at the closing on or about 11 January 2008 completely ignorant of the fraud that had occurred upon the loan application documents. At such closing, her husband Attorney Midgley and Defendant's closing attorney gave her the pile of fraudulent documents typed up by National City Mortgage employees with the fraudulent income in a pile to quickly and summarily sign without opportunity to review and read. She was never sent a copy of such documents as required by truth-in-lending requirements (TIL). At the closing, Attorney Midgley acted as her attorney and as part of the conspiracy with National City reviewed the documents and then along with National City Mortgage's agents had her simply sign the stack of dozens of documents without an opportunity to review and look at them. Whatever copies, if any, were ever sent out in compliance with TIL requirements were not sent to her.

10.    Late during the following year in 2009, her husband filed for divorce and left her on her own to make the debt payments on the above-referenced loan.  It was only at this point during the divorce proceedings that she learned that she was the only debtor on the loan documents and that he had not been listed as a borrower or a debtor on any of the notes or mortgages. Because she obviously could not afford the loan on $2600/year, she was forced to go into default and lose: her down payment of $26,519.36 and the $50,000 of improvements made to the property. Furthermore, this default has destroyed the excellent credit rating that she had before Defendant's employees conspired with Attorney Midgley to destroy it and as a result it is very difficult for her to find employment. The predictable and foreseeable severe emotional distress of such events has caused her headaches, lost sleep, depression, and dizziness.

**COUNT I - VIOLATION OF *MASS. G.L. C. 93A***

25.     Plaintiff restates and realleges the averments contained in Paragraphs 1 through 24 above, as if fully set forth herein.

26. Defendant through its agents for which it is vicariously liable as alleged herein has willfully engaged in unfair and deceptive trade practices in violation of *Mass. G.L. c. 93A*.

27. Plaintiff served a reasonable settlement offer pursuant to *Mass. G.L. c. 93A §9* upon the Defendant on 1/07/2011. Defendant failed to response to Plaintiff's demand within the 30 days allowed by *G.L.c. 93A, §9*.

WHEREFORE, the Plaintiff demands:

(1) damages in an amount determined by the court;

(2) attorneys' fees and costs;

(3) treble damages;

(4) equitable relief;

(4) granting such other and further relief as the court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES.**

Plaintiff by her attorney,

/s/ Valeriano Diviacchi
BBO# 555940
Diviacchi Law Office
111 Beach Street   #1A
Boston, MA 02111-2532
    617-542-3175
Fax 617-542-3175
Val@diviacchi.com

Date: 9 May 2012

CERTIFICATE OF SERVICE

I hereby certify that on 9 May 2012 I electronically filed the foregoing document with the District of Massachusetts by using the CM/ECF system. I certify that counsel of record registered as ECF Filers will be served by the CM/ECF system and that paper copies will be sent to those indicated as non-registered participants on 9 May 2012.

/s/ Valeriano Diviacchi